ROSENBERG v. BROOKLYN HEIGHTS R. CO. (two cases).  EHRLICH v. SAME.  BECK v. SAME.  SILVERMAN v. SAME.  SHARGIN v. SAME.

(Supreme Court, Appellate Division,· Second Department.  March 4, 1904.)

1. STREET RAILWAYS—TRANSFERS—REFUSAL TO TRANSFER—EVIDENCE.
   In an action against a street railway to recover a penalty, evidence *held* to show that the refusal of defendant's conductor to furnish plaintiff with a transfer ticket was willful. ·

2. SAME—EXCUSES—FAILURE TO HAVE TRANSFERS.
   The mere fact that a street railway conductor did not have the usual transfer tickets when requested to give them to a passenger, did not absolve the street railway from the statutory duty of furnishing transfer tickets. .

3. SAME—MISBEHAVIOR OF PASSENGER.
   The fact that boys riding on a street car indulged in "skylarking" did not affect their standing as passengers, or their right to have transfer tickets furnished them by the conductor.

Appeal from Trial Term, Kings County.

Action by Louis Rosenberg, an infant, etc., against the Brooklyn Heights Railroad Company.  From a judgment for plaintiff, and from an order denying a new trial, defendant appeals.  By agreement of counsel the cases of David Ehrlich, Pincus Beck, Nathan Silverman, Harry Rosenberg, and Louis Shargin, infants, etc., against the same defendant, are governed by this appeal.  Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

I. R. Oeland, for appellant.
Eugene V. Brewster, for respondent.

JENKS, J.  This action is to recover a penalty upon the refusal of the defendant to furnish a passenger with a transfer ticket.  The learned counsel for the appellant states in his brief:

"By agreement of the parties, the cases of David Ehrlich, Pincus Beck, Nathan Silverman, Harry Rosenberg, and Louis Shargin were all tried at the same time, and verdict was rendered for each plaintiff in the sum of $50, and judgment was entered upon the verdicts, the evidence being identically the same in each case.  By agreement of counsel, the case on appeal in the case of Louis Rosenberg is to control in the other cases.  The one appeal is to decide the rights of all the other parties."

The plaintiffs were young lads riding in company upon a car of the defendant.  The evidence shows that they asked for the transfers as passengers in good faith.  There is no question but that they duly demanded the transfers, or that the transfers were not given, or that the conductor finally gave as the ground of refusal that he had theretofore given out all of his transfer tickets.  The learned counsel for the appellant makes the point that upon the undisputed testimony it is established that there was no willful refusal to give transfers, and that, therefore, there was no case for the plaintiff.  But one of the lads testifies:

"We asked about transfers.  The conductor we asked a few times.  He says, he has not any.  He asked for fare first.  We asked a few times, and he re-

fused. When we asked him at the beginning he didn't want to give us any. When we asked him for the transfers at Flatbush and Atlantic he says he has not any when we asked him. I saw him give them to somebody else. He went by us, and went to the front. He started out to give out the transfers where the motorman is, up in the front, and when he came back said, 'I have not got any transfer.' I have not talked it over with anybody. Never talked it over with anybody. Never talked it over with the party. Never talked it over with any of the boys that were with me in this little disturbance. This is the first time I ever spoke about it. I swore to the same story on the stand in the other case. I say the conductor passed me before he gave out the transfers on the front; he skipped me. Before he got to the front, I asked him for a transfer. He refused to give it."

And, further, another witness testified that when the conductor told him that he did not have any transfers left they asked him for a slip showing that they had paid their fare for use upon the other car, but that he replied that he didn't want to lose time; he must go right ahead. At that time a car sought by the lads was approaching, and the conductor was then informed of this by them. So far as the first piece of testimony is concerned, that presents evidence of a willful refusal to furnish transfers. As to the second, it cannot, I think, be said that, as matter of law, the defendant was absolved, even if it were true that the conductor at that time did not have the usual transfer ticket. The purpose of the statute is to assure the passenger a continuous ride. As between the passenger and the company, it was the fault of the company if the conductor did not have the usual transfer ticket, inasmuch as the company was bound, under the statute, to furnish them. In such an emergency, if it existed, no good reason appears why the conductor could not have furnished a slip, as requested, for use on the approaching car, with an oral explanation, to its conductor, or could not, perhaps, have explained the situation to that conductor regardless of any slip. In any event, it would be going too far to hold the company excused upon the bare plea that its agent did not have the tickets which, by the statute, it is required to furnish. It is, of course, immaterial, so far as this action is concerned, that the lads indulged in skylarking on the car. Nevertheless they remained passengers entitled to the rights assured them by statute.

I think that Gaynor, J., correctly submitted the case to the jury, and that the judgment and order should be affirmed, with costs. All concur.