CHARLES H. SCHWARTZMAN et al., Plaintiffs, *v.* THE BROOKLYN HEIGHTS RAILROAD COMPANY, Defendant.

(County Court, Kings County, March, 1906.)

Carriers — Statutory penalties enforceable against carrier — Liability to penalty for refusing transfer ticket.

   Where, in an action to recover a penalty of fifty dollars under section 104 of the Railroad Law (L. 1890, ch. 565), the only dispute between the parties is whether or not the plaintiffs asked for transfers at the time when they paid their fares; and

it appears that the defendant, a street railway company, has established a system of transfers for its intersecting lines and furnished its conductors with tickets for the purpose of carrying its passengers for a single fare, it is not liable for such penalty to a passenger who has failed to receive a transfer through the misjudgment, neglect, mistake or inadvertence of the conductor or through the conductor's belief that the passenger was not entitled thereto for failure to comply with the notice requiring passengers to ask for transfers when paying fares; and a motion to dismiss at the close of the entire case should be granted.

ACTIONS to recover penalties under section 104 of the Railroad Law, for refusal to give transfers. Motion to dismiss the complaint. The opinion states the case.

Wilmot L. Moorehouse, for plaintiffs.

Geo. D. Yeomans (Harry F. Ives, of counsel), for defendant.

CRANE, J. These three actions, tried together, are brought to recover penalties under section 104 of the Railroad Law (L. 1890, chap. 565) for refusal to give transfers. The plaintiffs were passengers upon a Douglass street, or St. John's place car, which crossed the Hamburg avenue line at Rockaway and Liberty avenues. It is claimed by them that they demanded transfers from the conductor to enable them to continue their passage without payment of an extra fare on the Hamburg avenue line.

It is conceded, for this motion, that the defendant by the Railroad Law must give transfers from the Douglass street line to the Hamburg avenue line, and that, in compliance with this law, it had established a system of transfers, furnishing the conductor with tickets for the purpose and posting a notice in its cars regulating the distribution thereof.

The failure of the plaintiffs to receive transfers was not due to the refusal of the company to issue transfers at the point stated, or failure to comply with the law, but was due, either to the negligence of the conductor having the transfers, or through his belief that the plaintiffs were not entitled thereto for failure to comply with the reasonable require-

County Court, Kings County, March, 1906.    [Vol. 50.

ments of the notice posted in the car. This notice stated that passengers must ask for transfers when paying fares.

The only dispute between the plaintiffs and the defendant is whether or not the plaintiffs asked for transfers at the time they paid their fares. They say they asked for them when they boarded the car and paid their fares, while the conductor and other witnesses say they did not ask for transfers till arriving at the intersecting point.

To my mind, however, the principal question is one of law and that is whether the company subjects itself to the penalty of fifty dollars, having provided transfers and seeking to meet all the requirements of the Railroad Law, when its servant, the conductor, in the exercise of his judgment, makes a mistake.

The counsel for the railroad company, at the end of the entire case, has moved to dismiss and I have taken his motion under advisement for the purpose of examining authorities upon this point.

Most of the cases, if not all, deal with a state of facts where the companies have sought to resist the giving of transfers on certain lines; but the cases are few indeed where a company has been held liable for the fifty dollars' penalty, after it has established a system of transfers and the conductor has failed in the performance of his duty.

As I read the Railroad Law, it would seem to me to be the object of section 104 to force upon companies taking over intersecting lines by lease or contract to establish a system of transfers, so that these lines might be run as one continuous railroad; and that, where the company refused to run such intersecting lines as one railroad and for one single fare and refused to establish a system of transfers, then and only then was it liable to any aggrieved passenger for the penalty of fifty dollars.

Part of section 104 reads: "Every such corporation shall upon demand, and without extra charge, give each passenger paying one single fare a transfer entitling such passenger to one continuous trip to any point or portion of any railroad embraced in such contract, *to the end that the public convenience may be promoted by the operation of the rail-*

*roads embraced in such contract substantially as a single railroad with a single rate of fare."*

As suggested by Judge Hatch, in the Topham Case, 96 App. Div. 323, this italicized phrase must have some meaning. It would indicate, it appears to me, that the purpose and intent of the Legislature was to compel the railroad companies to establish transfers; and, for their refusal to comply with the law in this particular, they were to be subjected to a penalty.

It does not mean that, after a transfer system was established, the company would be liable for the penalty of fifty dollars if the conductor on its car failed, through neglect, inadvertence or misjudgment, to give a transfer. This would be a heavier burden placed on the railroad than if it were actually a continuous line and the passenger were wrongly ejected for the supposed nonpayment of fare.

In such a case the passenger has his common law action for breach of contract and would usually recover, if no violence was used, the price of his fare, five cents. Moon v. Inter-Urban St. R. R. Co., 85 N. Y. Supp. 363.

If both lines, those leased and those actually continuous, are to be run alike, the remedies for wrongful ejectment should be alike; and, for a mistake or neglect in refusing to give a transfer so that the passenger is ejected from the connecting car, or cannot take it, his remedy should be for breach of implied contract, the same as where he cannot ride because it is mistakenly asserted that he has not paid his fare.

Where the company has complied with the Railroad Law and established its system of transfers and made its reasonable rules, it does seem sensible that its servants and conductors should be able to exercise that same judgment regarding the giving of transfers as they do in the collection of fares, and that the company should suffer no severer consequences for a mistake of the conductor giving transfers than in collecting fares.

If the purpose of section 104 be as I have stated it, this inconsistency vanishes; for the company would not be liable for the penalty of fifty dollars where the conductor, having

County Court, Kings County, March, 1906. [Vol. 50.

transfers, makes a mistake in refusing certain particular individuals, but otherwise accommodates the public.

Section 101 specifies that no street surface railroad shall charge any passenger more than five cents for one continuous ride from any point on its road, or on any road, line or branch operated by it or under its control to any other point thereof, or any connecting branch thereof, within the limits of any incorporated city or village. What is the remedy for a passenger overcharged? Evidently under section 39 of the act, which reads: "Any railroad corporation which shall ask or receive more than the lawful rate of fare, unless such overcharge was made through inadvertence or mistake, not amounting to gross negligence, shall forfeit fifty dollars to be recovered with the excess so paid by the party paying the same," etc.

Under this section a railroad having a branch or connection must carry passengers for one fare and, to do this effectually, would probably provide transfers. If it charged a double fare, or, having transfers failed to give one to any passenger, whereby he had to pay twice, the penalty of fifty dollars could not be recovered if it appeared that such payment was exacted or transfer refused through inadvertence or mistake not amounting to gross negligence.

When a railroad operates a branch system under lease or contract, section 104 states that it shall be run as a continuous line. This evidently means as a line with branches originally all of one company, that is, a line with branches as specified and included in section 101.

Can there be any reason why negligence or mistake will bar a recovery of the penalty for failure to give a transfer on original branches of the same company and not on branches run under lease or contract? I confess I can see no reason.

And, there being no reason for such inconsistency, I do not believe section 104 should be so narrowly read as to create it.

The case of Tullis v. Brooklyn Heights Railroad Company, 71 App. Div. 494, while not exactly in point, certainly does not decide that negligence or oversight is not a good defence under section 104 as well as under section 39

The opinion says that both sections should be read together when action is brought for the exaction of a double fare, no valid transfer having been given.

Why should not the purport of section 39 also be read into section 104 when a transfer was refused and no extra fare demanded because the passenger did not board the connecting car?

Plaintiffs' counsel says that, behind this construction of section 104, the railroad company could plan to refuse transfers to all or many and prevent the recovery of the penalty by claiming oversight on the part of the conductor. Any such plan or scheme could be alleged and proved like any other fact and, when established, would make the company liable. Bad faith and gross neglect would be no excuse for a refusal.

I do not find in any of the authorities that this exact point has been passed on, unless the Tullis case be broad enough to cover it. Rosenberg v. Brooklyn Heights Railroad Company, 91 App. Div. 580, does not hold contrary to this proposition, as, in that case, the company failed to provide the conductor with sufficient transfers and he had none to give to the passengers.

With the great multitude of cases which are now being brought, under the supposition that a person being refused a transfer under any and all conditions can get fifty dollars, the courts should be awake to the situation and so construe section 104 of the Railroad Law as to give it good sense and meaning, carry out the evident intention of the Legislature and prevent injustice to the companies honestly seeking to make their connecting lines operate as one continuous line.

Judge Hatch's opinion in the Topham Case I do not think has been overruled by the Court of Appeals in the O'Reilly and Griffin cases, in so far as he there expresses the way in which railroad companies conducting their business may meet and comply with the provisions of this section 104. That case was overruled in so far as it held that the company could refuse all transfers at the intersecting point in question; but, as I do not find in any case, unless it be Muscovitz against the Brooklyn Heights Railroad Company, 47 Misc. Rep. 119, that the construction given by Judge Hatch

County Court, Onondaga County, March, 1906. [Vol. 50.

to this law has been overruled or disagreed with, I have taken the liberty of expressing my opinion in the matter and to conclude that, under section 104 of the Railroad Law, the company is not liable to a penalty of fifty dollars where it has established a system of transfers for its intersecting lines and furnishes its conductors with tickets for the purpose of carrying its passengers for a single fare, and some individual passenger has failed to receive transfers through the misjudgment, neglect, mistake or inadvertence of the conductor. In such a case, I believe his remedy to be the same as if he had been ejected before finishing or completing his journey through a mistaken belief on the part of the conductor that he had not paid his fare at all, that is, to a common-law action for damages.

As the evidence discloses in this case no gross negligence, but at most a mistake or oversight, the motion to dismiss for the reasons stated is granted.

Ordered accordingly.