secured a proper party, who would lease the property at the agreed price, and offered to pay $100 as a deposit; that defendant said he did not want a deposit, but arranged to meet the prospective lessee on the following Monday at 2 o'clock; that, as defendant failed to keep the appointment on Monday afternoon, plaintiff went to defendant's house the same evening with his client, Pagano, and one Gagliano and his father, and then offered defendant the leases and the agreed sum of $1,100 as two months' advance rent. Defendant, however, refused to accept the leases or the money, but informed plaintiff that that morning he had secured another tenant at a better price. There is no evidence to show who this Pagano was, where he resided, or what his business was, or any other fact or facts which might indicate that he would have been a satisfactory and reliable tenant. It appears, however, that the $1,100 to be paid as advance rent was drawn by the plaintiff from his own savings bank account, and that he took the money out of his pocket when he produced it before the defendant at the latter's house. Pagano was not produced on the trial, nor does it appear that the leases alleged to have been submitted by plaintiff to defendant, which defendant denies, were satisfactory to him. The plaintiff has not shown in our opinion by a preponderance of proof that there was any meeting of the minds of the parties in respect to the terms of any lease, that he has performed such services as entitled him to a commission as a broker, or such facts as precluded the defendant from his ordinary right to lease to another and to terminate at will a contract with a broker before a bargain was made by which the broker's commissions might become fixed. Sibbald v. Bethlehem Iron Co., 83 N. Y. 378, at pages 383, 384, 38 Am. Rep. 441.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.

---

### LEVINE v. NASSAU ELECTRIC R. CO.

(Supreme Court, Appellate Term. June 1, 1906.)

CARRIERS—REFUSAL OF TRANSFER—RULES OF COMPANY.

Under Laws 1890, p. 1096, c. 565, § 39, providing that any railroad corporation which shall ask or receive more that the lawful rate of fare, unless through inadvertence or mistake not amounting to gross negligence, shall forfeit $50, and section 104, as amended by Laws 1892, p. 1406, c. 676, providing that a street surface railroad corporation using several lines in a city shall on demand and without extra charge give to each passenger paying a single fare a transfer, entitling him to one continuous trip to any point on any such line, and for refusal to do so shall forfeit $50, a street railroad company is liable for the penalty, though it has made a rule that the transfer be demanded when the fare is paid, and the conductor refused one because it was not demanded till some time thereafter.

Appeal from Municipal Court, Borough of Manhattan, Fourth District.

Action by Samuel Levine against the Nassau Electric Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before GILDERSLEEVE, DAVIS, and CLINCH, JJ.

· George D. Yeomans (H. F. Ives, of counsel), for appellant.
Charles S. Rosenthal, for respondent.

CLINCH, J.　The action was brought to recover $50 as a penalty for the failure on the part of defendant to issue a transfer from the Hamburg avenue line to the Douglass street line in Brooklyn, both lines being admittedly owned and controlled by the defendant. The only dispute upon the facts is as to whether the plaintiff asked for the transfer at the time he paid his fare, or at some time thereafter. The plaintiff claimed that he asked for a transfer on the bridge at the time he paid his fare. The conductor claimed that he did not demand a transfer until after he had been riding on the car for 40 minutes. Although it may be fairly assumed that the trial judge by his decision found in favor of the plaintiff on this point, it is not important to determine whether he did so or not; for it is an undisputed fact that the plaintiff did demand a transfer before he reached the transfer point, and that it was refused upon the sole ground, as appears from the record, that he had not complied with the rules of the company in asking for a transfer at the time he paid his fare. It is admitted that had he done so he would have been entitled to receive a transfer, and the sole question presented is whether or not by this refusal of the conductor, acting under its specific instructions and in conformity to its rules, the company became liable for the penalty provided by section 39 of the railroad law (Laws 1890, p. 1096, c. 565). This point upon similar facts has been raised in but one case—that of Schwartzman v. Brooklyn Heights R. R. Co., decided on March 16, 1906, in the County Court of Kings county (98 N. Y. Supp. 941). In that case the learned judge dismissed the plaintiff's complaint, and based his decision apparently upon the theory that, inasmuch as the company had complied with section 104 of the railroad law (Laws 1890, p. 1114, c. 565, as amended by Laws 1892, p. 1406, c. 676), and established its system of transfers and made its reasonable rules, it could not be held liable for the inadvertence or mistake of the conductor in failing to give a transfer; but that the plaintiff has no remedy but a common-law action for damages, by which, of course, is meant an action to recover the fare paid by him in continuing his journey. With this decision I am not in accord. It has been held that sections 39 and 104 of the railroad law "are in pari materia, and must be construed together. * * * And where the exaction is in violation of both sections, the defense provided in section 39 is available, and a railroad corporation, sued as the defendant here, can relieve itself from liability by showing, as provided for in section 39, that such 'overcharge was made through inadvertence or mistake not amounting to gross negligence.' " Tullis v. Brooklyn Heights R. R. Co., 71 App. Div. 494, 75 N. Y. Supp. 863. It is upon this case that the learned judge relies. But there the facts were very different. The conductor had refused to receive a transfer because the time limit had expired. He subsequently, and before the plaintiff left the car, voluntarily offered to accept the transfer, and refund the five cents fare which the plaintiff had paid. The court might well hold that under such circumstances the plaintiff

should not be allowed to recover a penalty. But here a very different condition exists. There was no inadvertence or mistake on the part of the conductor. On the contrary, he acted intelligently and positively, and upon the specific instructions of the company. He had no choice, no opportunity to exercise discretion of any kind. Had he disobeyed the company's rules, he might have rendered himself liable to punishment or dismissal. The company cannot hide behind him or plead his inadvertence or mistake under such circumstances. The question then necessarily arises, was the company justified in making such a rule? and that, after all, is the sole point at issue. To answer this question it is necessary to refer to section 104 of the railroad law. It is therein provided that:

"Every such corporation shall upon demand, and without extra charge give to each passenger paying one single fare a transfer, entitling such passenger to one continuous trip to any point or portion of any railroad embraced in such contract," etc.

The language of the statute is clear, broad, and unmistakable. The meaning of the Legislature is plain, and subject to no double construction. The passenger as soon as he has paid his fare becomes possessed of the absolute right to a transfer to any connecting line to which transfers are issued. That right continues up to the point at which he must leave the car to take the connecting car, and the company cannot arbitrarily restrict, limit, or abridge that absolute right which is given by statute, and which by the strict language of the statute it must recognize "upon demand and without extra charge." It may provide reasonable regulations, to the end "that public convenience may be promoted," but it would require a vivid imagination to hold that this particular rule looked toward the attainment of that lawful purpose. On the contrary, by its very nature it places upon the passenger the burden of deciding at the moment of paying his fare whether he desires to transfer to any of the various lines on which he is entitled to ride, upon the penalty, if he does not then secure a transfer, of paying an extra fare should any circumstance arise thereafter during his trip that might render it convenient or necessary for him to so transfer to a connecting line. Surely this is not such a reasonable regulation as tends to promote public convenience. And further, if the company can assert its right to enforce such a rule, it may with as much justice or reason require that the transfer shall be asked for after the passenger has ridden five blocks, or a quarter of a mile, or by a set form of language when the demand is made. The cases cited by the appellant, with the single exception of the one already discussed, are not in point as to the question here before the court, nor is there anything contained in those cases which contravenes the doctrine herein expressed.

The judgment must be affirmed, with costs to the respondent. All concur.